Filed 12/13/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FRANK RUIZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B324477<br>(Super. Ct. No. 2014011115)<br>(Ventura County) |

This is our third, and hopefully our last, opinion in this sentencing matter.  In our original opinion (*People v. Ruiz* (Feb. 10, 2020, B291732) [nonpub. opn.] (*Ruiz I*)), we vacated the trial court's unauthorized Penal Code section 654 stay of execution of a 10-year consecutive sentence for a firearm-use enhancement.[1] (§ 12022.5, subd. (a).)  As a result, appellant's unstayed aggregate sentence was increased from 18 years to 28 years.  Out of fairness to appellant, we directed the trial court to exercise its discretion whether to strike the firearm-use enhancement as well as a five-year enhancement for a prior serious felony conviction.  (§ 667, subd. (a)(1).)  The trial court refused to strike either

---

[1] All statutory references are to the Penal Code.

enhancement.  It resentenced appellant to prison for an aggregate term of 28 years.

A second appeal followed.  In *People v. Ruiz* (March 29, 2022, B307717) [nonpub. opn.] (*Ruiz II*), we rejected appellant's claims that (1) the trial court abused its discretion in refusing to strike the prior serious felony conviction and firearm-use enhancements, and (2) the cause must be remanded to the trial court for resentencing in light of Assembly Bill No. 518, which amended section 654 (Stats. 2021, ch. 441).  Again out of fairness to appellant, we vacated the sentence and remanded the cause for resentencing in light of Senate Bill No. 567 (S.B. 567), which amended section 1170 (Stats. 2021, ch. 731).  (See pp. 5-6, *post*.)

On remand the trial court resentenced appellant to an aggregate term of 23 years, calculated as follows: assault with a firearm (§ 245, subd. (a)(2)) – the upper term of four years, doubled to eight years because of a prior strike; plus the upper term of 10 years for the firearm-use enhancement; plus five years for the strike/serious felony conviction.  The court stayed the sentence imposed for a gang enhancement (§ 186.22, subd. (b)(1)).

Appellant now contends: (1) the true finding on the gang enhancement allegation must be vacated, (2) in selecting the upper term for both the conviction of assault with a firearm and the firearm-use enhancement, the trial court relied on aggravating factors that are inapplicable pursuant to S.B. 567; (3) appellant is entitled to additional days of custody credit, (4) the aggregate sentence imposed on remand could not have exceeded the 18-year aggregate sentence originally imposed; and (5) the matter must again be remanded for resentencing because of a recent amendment of section 1385.

We accept the People's concession that the true finding on the gang enhancement allegation must be vacated. We remand the matter to the trial court to afford the People an opportunity to retry the allegation. We modify the judgment to award appellant additional days of custody credit. In all other respects, we affirm.

*Facts*

The facts are taken from our first unpublished opinion. (*Ruiz I*, *supra*, slip opn. at pp. 3-4.)

"One night in October 2013, [R.M. (victim)] and his girlfriend, [J.M], drove to Vons to buy baby supplies. [J.M.] entered the store while [victim] remained by the vehicle in the parking lot. A young, skinny man approached [victim] and asked, '[W]here you from?' [Victim] replied, 'I ain't from nowhere, where you from?' The man said he was from 'Southside' or 'Sur Town.' The man 'tried to sucker punch' [victim] and 'barely misse[d]' him.

"[Victim] chased the man, who was not armed. He heard [his girlfriend] call out that someone had a gun. [Victim] suddenly saw a bigger, older man about 15 feet away and 'could hear him try to cock [the gun], but he couldn't.' [Victim] 'started running.' 'He was zig-zagging in an attempt not to get shot.' He heard one shot fired. The bullet did not strike him.

"[Witness E.W. testified that he had seen] the bigger, older man chase [victim]. The man shot once at [victim]. He 'was definitely trying to hit [him].' 'He was aiming directly at [him].' It was not 'a warning shot.' The shooter and his companions ran to a car, entered it, and drove away 'at a high rate of speed.'

"The shooter was identified as appellant. He was a long-time member of the Sur Town Chiques (Sur Town) criminal

3

street gang.  His gang moniker was 'Villain.'  The trial court took judicial notice before the jury that in 2002 appellant had been convicted 'of a violent felony for the benefit of the Sur Town criminal street gang against a victim who [was] a documented member of the Colonia Chiques criminal street gang.'  [Footnote omitted.]  A gang expert opined that appellant was still a member of Sur Town at the time of the October 2013 Vons parking-lot shooting.

"The skinny, younger man who threw the punch at [victim] was identified as [J.H.].  A gang expert opined that [J.H.] 'was a Sur Town gang member . . . .'

"A police officer found a spent shell casing in the Vons parking lot.  The shell casing had been ejected from the same 9-millimeter pistol that had been used in four other gang shootings.

"In response to the prosecutor's hypothetical question incorporating the facts of the Vons parking-lot shooting, a gang expert opined that it had been committed for the benefit of a criminal street gang."

*Gang Enhancement*

The jury found true an allegation that appellant had committed the assault with a firearm for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).  Assembly Bill No. 333 (Stats. 2021, ch. 699) (A.B. 333) "amended section 186.22 to, in various respects, *increase* the evidentiary burden necessary to prove a gang-related crime enhancement."  (*People v. Rodriguez* (2022) 75 Cal.App.5th 816, 822.)  The amendment applies retroactively to cases not yet final on appeal.  (*People v. Tran* (2022) 13 Cal.5th 1169, 1206-1207.)

We accept the People's concession, which is as follows: "[T]he elements of the newly amended gang enhancement under

4

section 186.22 are not satisfied. Namely, the current record does not establish that the predicate offenses benefitted appellant's gang in a manner that was more than reputational." We vacate the true finding on the gang enhancement and remand the matter "'to give the People the opportunity to prove the applicability of the enhancements under the amendments to section 186.22.'" (*People v. Vasquez* (2022) 74 Cal.App.5th 1021, 1033.)

*S.B. 567: Selection of the Base Term*

S.B. 567 became effective on January 1, 2022. It amended the standards for imposing an upper-term sentence. As amended, section 1170, subdivision (b)(1) provides that, where a person is convicted of a public offense, "the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." Paragraph (2) provides, "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." There is an exception to this rule for prior convictions: "[T]he court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (*Id.*, subd. (b)(3).)

S.B. 567 similarly amended section 1170.1, subdivision (d) to mandate a presumptive middle term for enhancements. Unlike sentencing for conviction of a public offense, there is *no prior conviction exception* [based on a certified record of

5

conviction] . . . for imposing an upper term on applicable enhancements." (*People v. Falcon* (2023) 92 Cal.App.5th 911, 956, review granted Sept. 13, 2023, S281242.)

*The People Concede that the Trial Court*
*Considered Inapplicable Aggravating Factors*

The trial court said it was imposing the 4-year upper term for the assault with a firearm charge and the 10-year upper term for the firearm-use enhancement because appellant "poses a serious danger to society."

In concluding that appellant "poses a serious danger to society," the trial court relied on seven factual findings. The People submit that four of the findings "were not found true beyond a reasonable doubt by the jury, and . . . it cannot be said with certainty that a jury would . . . conclude [they were true] beyond a reasonable doubt." The four findings are: (1) "[appellant] has a predilection for unprovoked, unpredictable violent behavior and a disregard for human life"; (2) "[t]his offense is almost identical in many significant respects to his prior 2002 violent offense, demonstrating a failure to rehabilitate or change his violent behavior"; (3) "[t]he present offense was committed in concert with another person, thereby increasing the danger to the victims and the public"; and (4) "[appellant] has a substantial criminal record dating back to the age of 13."

"[T]o the extent the trial court's imposition of the upper term was based on" the above four findings, conceded by the People to be inapplicable, "it committed error under Senate Bill 567. That is because, contrary to the dictates of the new law, [appellant] had not stipulated to the facts underlying these factors, nor were the facts found true beyond a reasonable doubt by a jury or by a judge in a court trial." (*People v. Ross* (2022) 86

6

Cal.App.5th 1346, 1353, review granted Mar. 15, 2023, S278266 (*Ross*).) Moreover, the fourth finding concerning appellant's criminal record "dating back to the age of 13" was not "based on a certified record of conviction." (§ 1170, subd. (b)(3).)

The People maintain that the trial court properly relied on three of the trial court's seven factual findings because they "were found true beyond a reasonable doubt by a trier of fact or were supported by a certified record of conviction." The three findings are: (1) "[appellant] has engaged in unprovoked violent conduct under circumstances that indicate that he is a serious danger to society"; (2) "[l]ess than 5 years [had] elapsed between [appellant's] release from prison for his prior violent offense and less than one month [had] elapsed from his discharge from parole . . . [when he] committed the present offense[, thus] demonstrating that a longer period of incarceration is necessary to protect the public and potentially aid in rehabilitation"; and (3) "[appellant] served a prior prison term."

Appellant contends "[t]he only . . . facts supported by the certified record of conviction are that the charged offense occurred less than five years from his release from prison, less than a month after being discharged from parole, and [that he] served a prior prison term." Appellant asserts, "No other factor was proven beyond a reasonable doubt or stipulated to by appellant."

*People's Contention that Appellant*
*Forfeited Claim of Resentencing Error*

Appellant's counsel did not object to the trial court's reliance on inapplicable aggravating factors. The People contend that, by not objecting, appellant forfeited his claim of resentencing error. (See, e.g., *People v. Tilley* (2023) 92

7

Cal.App.5th 772, 778.) We need not decide whether a forfeiture occurred. Even if appellant's failure to object constituted a forfeiture, we would again extend fairness to appellant and exercise our discretion to reach the merits of his claim of sentencing error. (See *People v. Williams* (1998) 17 Cal.4th 148, 161-162, fn. 6.)

*Harmless Error*

"Courts . . . have concluded this type of [sentencing] error is subject to harmless error review." (*Ross*, *supra*, 86 Cal.App.5th at p. 1353.) The appellate courts are divided on the standard for assessing prejudice. (See, e.g., *People v. Flores* (2022) 75 Cal.App.5th 495, 500; *Ross*, *supra*, at p. 1353.) The issue is pending before our Supreme Court in *People v. Lynch* (May 27, 2022, C094174) [nonpub. opn.], review granted Aug. 10, 2022, S274942.

Our Supreme Court recently considered the standard for assessing prejudice where, before the effective date of S.B 567, the trial court did not impose the lower term for an offense as provided by new subdivision (b)(6) of section 1170.[2] (*People v. Salazar* (Nov. 20, 2023, S275788) __ Cal.5th __ [2023 Cal. LEXIS 6529] (*Salazar*).) The Supreme Court did not consider the standard for assessing prejudice where, as here, after the effective date of S.B. 567 the trial court imposed the upper term instead of the middle term under section 1170, new subdivisions

---

[2] Section 1170, subdivision (b)(6) provides, "[U]nless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: . . . ."

(b)(1) and (b)(2).  (See *Salazar, supra,* 2023 Cal. LEXIS at *19, fn. 7 ["We do not address" the issue of "what prejudice standard applies on appeal when determining whether a case with an upper term sentence should be remanded for resentencing under Senate Bill 567"].)

We assess prejudice through a two-step process.  The first step is whether the jury would have found true beyond a reasonable doubt the aggravating factor that appellant "has engaged in unprovoked violent conduct under circumstances that indicate that he is a serious danger to society."  Section 1170, subdivision (b)(2) provides that the court "may impose a sentence exceeding the middle term" when "the facts underlying [the aggravating circumstances justifying imposition of the upper term] have been . . . found true beyond a reasonable doubt at trial by the jury . . . ."

We are convinced that the jury would have found true beyond a reasonable doubt the aggravating factor that appellant "has engaged in unprovoked violent conduct under circumstances that indicate that he is a serious danger to society."  Appellant's assault with a firearm was "unprovoked violent conduct."  The victim was unarmed and had not attacked or threatened appellant.  When appellant committed the assault, the victim was running away from him.  "'[The victim] was zig-zagging in an attempt not to get shot.'"  A witness testified that appellant "'was definitely trying to hit [the victim].'  'He was aiming directly at [the victim].'"

The evidence presented to the jury, together with appellant's criminal record based on a certified record of conviction, makes clear that "he is a serious danger to society."  The pistol used in the shooting "had been used in four other gang

9

shootings." (*Ruiz I, supra,* slip opn. at p. 4.) "The trial court took judicial notice before the jury that in 2002 appellant had been convicted 'of a violent felony for the benefit of the Sur Town criminal street gang against a victim who [was] a documented member of the Colonia Chiques criminal street gang.'" (*Id.* at pp. 3-4.) Appellant's prison sentence for the prior conviction and parole supervision had been ineffectual in rehabilitating him. He committed the present offense less than a month after his discharge from parole. Whether the error is harmless or not, is addressed to the appellate court's discretion and we are, according to Bernard Witkin, allowed to "weigh the evidence to some extent." (9 Witkin, Cal. Procedure (6th ed. 2021) Appeal, § 439, p. 475; see also *People v. Cahill* (1993) 5 Cal.4th 478, 490, 493.) If we had any doubt about our conclusion, we would rule in appellant's favor.

The second step in assessing prejudice is whether the trial court would have selected the upper term had it known that it could rely solely on the following four applicable aggravating factors: appellant's (1) 2002 strike conviction, (2) service of a prior prison term for that conviction, (3) commission of the new offense less than five years after his release from prison and less than one month after his discharge from parole, and (4) commission of "unprovoked violent conduct under circumstances that indicate that he is a serious danger to society."

In *Salazar, supra,* 2023 Cal. LEXIS 6529, at \*12-13, our Supreme Court concluded that, where a court ""is unaware of the scope of its discretionary [sentencing] powers,"" the "appropriate remedy is to remand for resentencing unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such

10

discretion.""" We see no reason why we should apply a stricter standard of prejudice than the one selected by our Supreme Court in *Salazar*. Accordingly, the matter should not be remanded for resentencing if the record clearly indicates that the trial court would have imposed the upper term had it known that it could rely solely on the four applicable aggravating factors listed above.

The record clearly so indicates. This is the third time that the same trial court judge sentenced appellant to the upper terms. In its ruling the court mentioned only aggravating factors. It did not refer to a single mitigating factor. Appellant contends that "any formal objection" to the trial court's reliance on inapplicable aggravating circumstances "would have been futile" because "the court's comments indicate that it would not consider reimposing a different sentence," i.e., a sentence other than the upper term on the firearm-use enhancement and the conviction of assault with a firearm.

In *Salazar* the trial court sentenced the defendant before the effective date of S.B. 567. Our Supreme Court noted, "When the applicable law governing the defendant's sentence has substantively changed after sentencing, it is almost always speculative for a reviewing court to say what the sentencing court would have done if it had known the scope of its discretionary powers at the time of sentencing." (*Salazar*, *supra*, 2023 Cal. Lexis 6529 at *28.) Unlike *Salazar*, here S.B. 567 became operative months before the trial court resentenced appellant. In the second appeal (*Ruiz II*) we vacated the sentence and remanded the cause for resentencing in light of S.B. 567. Appellant asserts, "There was no indication here that the [trial] court did not understand its discretion or the law, and SB 567 was the only issue at resentencing."

11

The trial judge is a seasoned veteran, well versed in criminal law and procedure. He was well aware that S.B. 567 had "amended section 1170, subdivision (b) 'to make the middle term the presumptive sentence for a term of imprisonment . . . .'" (*People v. Mitchell* (2022) 83 Cal.App.5th 1051, 1057.) He reasonably concluded that appellant is a "serious danger to society."

Thus, reversal for a fourth sentencing hearing would be an unwarranted exaltation of form over substance. (See *People v. Blessing* (1979) 94 Cal.App.3d 835, 839; *United States v. DiFrancesco* (1980) 449 U.S. 117, 142 ["The exaltation of form over substance is to be avoided"].) It would be a waste of judicial resources to afford the trial court a fourth opportunity to impose the middle term.

*Appellant's Custody Credits*

Appellant contends he should have received credit for his actual days of presentence custody plus the time he had actually served in prison for a total of 1,693 days. We agree.

*Appellant's Sentence on Remand Could*
*Lawfully Exceed the Sentence Originally Imposed*

The trial court originally imposed an aggregate sentence of 28 years, but erroneously stayed a consecutive 10-year upper term for the firearm-use enhancement pursuant to section 654. Therefore, appellant's unstayed aggregate sentence was reduced to 18 years. (*Ruiz I, supra*, slip opn. at pp. 16-20.) In *Ruiz I* we corrected the error "under the unauthorized sentence concept." (*Id*. at p. 18.) We increased appellant's unstayed aggregate sentence from 18 years to 28 years.

Appellant contends that "because [at the original sentencing] the court could have reached the same total [an

12

unstayed aggregate sentence of 18 years] in an authorized manner" by striking the firearm-use enhancement, "the resentencing court was limited to the total of the original [18-year unstayed aggregate] sentence on remand." Thus, "remand is required with instructions for the trial court to impose a term totaling 18 years or less."

We disagree. "Under the general rule of state constitutional law that the California Supreme Court has referred to as the *Henderson* rule, '[w]hen a defendant *successfully appeals a criminal conviction,* California's constitutional prohibition against double jeopardy precludes the imposition of more severe punishment on resentencing.'" (*People v. Vizcarra* (2015) 236 Cal.App.4th 422, 431.) "However, in *People v. Serrato* (1973) 9 Cal.3d 753, 764 . . . , disapproved on another point in *People v. Fosselman* (1983) 33 Cal.3d 572, 583 . . . , the California Supreme Court 'set out an exception to this general [*Henderson*] rule.' [Citation.] In *Serrato* . . . the Supreme Court explained that '[t]he rule is otherwise when a trial court pronounces an *unauthorized sentence.* Such a sentence is subject to being set aside judicially and is no bar to the imposition of a proper judgment thereafter, *even though it is more severe than the original unauthorized pronouncement.*'" (*Id.* at pp. 431-432.) "[T]he fact that the trial court at the original sentencing *theoretically* could have imposed an [authorized sentence that was the same length as the unauthorized sentence] does not mean that the . . . sentence the court *actually* imposed at the original sentencing was an authorized sentence." (*Id.* at p. 438.)[3]

---

[3] After this appeal had been taken under submission, we received a letter from appellant informing us of a newly filed

*The Trial Court Did Not Abuse Its Discretion*
*Under the Recent Amendment to Section 1385*

In his supplemental brief, appellant contends that the matter must again be remanded for resentencing so the trial court can consider new mitigating factors in determining whether the enhancements should be dismissed pursuant to section 1385. The new factors were established by Senate Bill No. 81 (S.B. 81). (2021-2022 Reg. Sess., Stats. 2021, ch. 721, § 1.)  Effective January 1, 2022, S.B. 81 "amended section 1385 to specify mitigating circumstances that the trial court should consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Lipscomb* (2022) 87 Cal.App.5th 9, 16.)

Appellant asserts that "[t]hree mitigating circumstances from the newly amended section 1385 apply to [him]."  The

---

opinion, *People v. Trammel* (Nov. 21, 2023, A166756) __ Cal.App.5th __ [2023 Cal.App. Lexis 903] (*Trammel*).  Appellant contends *Trammel* "is relevant to whether [his] sentence on appeal can exceed his original sentence."  We grant permission to file the letter.

*Trammel* is contrary to appellant's position.  In *Trammel* the question was "whether an erroneous sentence under section 654 which improperly *inflated* Trammel's aggregate sentence falls within the *Serrato* exception, thus allowing a harsher sentence on remand." (*Trammel, supra*, 2023 Cal.App. Lexis at *36.)  The Court of Appeal held that such a sentence does not fall within the exception. (*Id.*, at *36-37.)  "[T]he *Serrato* exception only applies to unauthorized sentences which were unlawfully lenient to the detriment of the People." (*Id.*, at *37.)  Here, the trial court's erroneous original sentence under section 654 was unlawfully lenient.  It *reduced* appellant's aggregate unstayed sentence by 10 years.  Therefore, the *Serrato* exception applies.

circumstances are: (1) "[m]ultiple enhancements are alleged in a single case" (§ 1385, subd. (c)(2)(B)); (2) "[t]he application of an enhancement could result in a sentence of over 20 years" (*id*., subd. (c)(2)(C); and (3) "[t]he enhancement is based on a prior conviction that is over five years old" (*id*., subd. (c)(2)(H)). "Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (*Id*., subd. (c)(2).)

Appellant claims: "Because the record makes no mention of the specific [mitigating] factors enumerated in section 1385, the case must be remanded for consideration of whether the trial court shall dismiss the enhancements in the furtherance of justice." "The trial court abused its discretion by not considering whether to dismiss all but one of appellant's enhancements based on these mitigating factors pursuant to section 1385."

The amendment to section 1385 was in effect when the trial court resentenced appellant on October 19, 2022. "'The general rule is that a trial court is presumed to have been aware of and followed the applicable law. [Citations.] These general rules concerning the presumption of regularity of judicial exercises of discretion apply to sentencing issues. [Citations.]'" (*People v. Martinez* (1998) 65 Cal.App.4th 1511, 1517.) Moreover, "it is settled that: 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. . . .'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

15

Accordingly, we presume the trial court was aware of the section 1385 amendment and properly applied it in resentencing appellant.  It is reasonable to infer that the court found "that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).)  In justifying its imposition of the 10-year upper term for the firearm-use enhancement, the trial court found that appellant "has engaged in unprovoked violent conduct under circumstances that indicate that he is a serious danger to society."

We cannot presume the trial court "failed" to properly consider the three claimed relevant mitigating factors merely because it did not expressly mention them.  Nothing in amended section 1385 requires the sentencing court to state on the record the relevant mitigating factors set forth in subdivision (c)(2).

We have given the trial court two opportunities to extend leniency.  It has declined to do so.  This is a clear indication that the trial court would not now extend leniency to appellant. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

*Disposition*

The true finding on the gang enhancement (§ 186.22, subd. (b)(1)) is vacated.  The matter is remanded to the trial court with directions to afford the People an opportunity to retry the enhancement and meet its burden of proof pursuant to A.B. 333's new requirements.  The judgment is modified to award appellant 1,693 days of actual custody credits, consisting of 101 days in jail and 1,592 days in prison through the resentencing date of October 19, 2022.  In all other respects, the judgment is affirmed. The trial court shall prepare a corrected abstract of judgment and shall transmit a certified copy to the Department of Corrections and Rehabilitation.

16

<u>CERTIFIED FOR PUBLICATION</u>.


YEGAN, Acting P. J.

We concur:

BALTODANO, J.


CODY, J.

17

YEGAN, Acting P. J., Concurring:

There is a price to be paid in the quest for perfect justice. Here, by reason of the Legislature's constant tinkering with sentencing rules, we are asked to reverse/remand for a fourth sentencing hearing. And, of course, if appellant is not satisfied, he will appeal for the fourth time. This is an undue burden upon the criminal justice system, the Superior Court and the Court of Appeal. It also adversely impacts the civil justice system. And, perfect justice, while an admirable goal, is unattainable despite our best efforts.

This appeal is not an outlier. Resentencing issues now dominate our appellate calendars. There are, undoubtedly, jurists who believe that there should be no limitation on how many resentencing hearings and appeals should transpire. This is a purely academic view of criminal procedure. It ignores practical and "workable" sentencing procedures, as well as the California constitutional harmless error rule. It also erodes the concept of "Finality of Judgment."

Appellant is lucky to be serving a 23-year determinate term. He could have easily been charged with and convicted of willful, deliberate, and premeditated attempted murder with a firearm. Such a conviction would have been punishable by life imprisonment with the possibility of parole. (§ 664, subd. (a).) Could any objective reader reasonably believe that appellant did not intend to kill the fleeing victim? Was he trying only to wound the victim? Was he intending only to scare the victim? A witness testified that appellant "'was aiming directly at [the victim]'" and "'was definitely trying to hit [him].'" But for the grace of God, appellant's faulty marksmanship, and the victim's serpentine

1

running, the victim would have suffered a gunshot wound to his back that could have been fatal.

Ah!, those dear dead days of the indeterminate sentence law. Then, sentencing was pretty easy upon denial of probation. The only significant "choice" was whether to impose consecutive or concurrent terms. There were few sentencing disputes on appeal and I recall no instance where the superior court was called upon to resentence a defendant three times. The sentencing court would say: "You are sentenced to state prison for the term prescribed by law." That was it. Sentencing was simple and the Adult Authority would either keep the defendant in prison "for the term prescribed by law," or grant parole after a suitable period of confinement. The indeterminate sentence law was repealed by the enactment of the Uniform Determinate Sentencing Act of 1976, which became operative on July 1, 1977.

Because of the Legislature's constant tinkering with the already complex sentencing rules, the law has become an unsettled minefield.[1] The goal of the Determinate Sentence Law

---

[1] See this court's opinion in *People v. Neely* (2009) 176 Cal.App.4th 787, 791: "For over 30 years, opinions of the California Courts of Appeal have commented on the frustrating and needless complexity of the Determinate Sentencing Law (DSL). Reversals and remands for resentencing resulting from the misapplication of the DSL litter the pages of appellate decisions, both published and unpublished. This is yet another such case to fall victim to the 'labyrinthine procedures,' of the 'legislative monstrosity' whose 'mind-numbingly complicated' statutes are 'capable of ensnaring even its most erudite afficionados.'" (Fns. omitted.)

is to impose "terms that are proportionate to the seriousness of the offense with provisions for uniformity in the sentences of people incarcerated for committing the same offense under similar circumstances."  (§ 1170, subd. (a)(1).).  Does anyone think that this goal is now being achieved?

CERTIFIED FOR PUBLICATION.


                                    YEGAN, Acting P. J.

David R. Worley, Judge

Superior Court County of Ventura

_____

Richard Lennon, Executive Director, Cheryl Lutz and Sydney Banach, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Julie A. Harris, Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.